In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-1335

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KARVIS CARTER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 705-1 — **Rebecca R. Pallmeyer**, *Judge.*

ARGUED JULY 6, 2016 — DECIDED JULY 19, 2016

Before POSNER, SYKES, and HAMILTON, *Circuit Judges.*

SYKES, *Circuit Judge.* Karvis Carter pleaded guilty to possessing cocaine with the intent to distribute it. *See* 21 U.S.C. § 841(a)(1). Over Carter's objection the sentencing judge applied a six-level upward adjustment to his total offense level under the Sentencing Guidelines based on a finding that he had assaulted police officers while attempting to flee an arrest. *See* U.S.S.G. § 3A1.2(c)(1). On appeal Carter renews his objection to the application of § 3A1.2(c)(1), arguing that

the judge failed to make a specific finding about whether his conduct during the struggle was serious enough to pose "a substantial risk of serious bodily injury" to the officers, as required by § 3A1.2(c)(1). We affirm.

## I. Background

Police officers from the Chicago Police Department's gang-investigations section observed Carter purchase cocaine from a known drug dealer on a residential street on the west side of Chicago. As Carter drove away from the exchange, Officers Jason Brown and George Lopez followed him in an unmarked squad car. As soon as the officers pulled behind Carter, he sped up. The officers activated their emergency lights and siren, and a high-speed chase ensued. Carter wove through traffic, blew through stop signs, and clocked 80 miles per hour speeding through residential streets and alleyways. He narrowly missed hitting a child on a bicycle and drove over a sidewalk scattering pedestrians. The chase eventually halted when Carter lost control of the car and slammed into a curb. He attempted to flee on foot but was caught by the officers. A brief struggle ensued before the officers wrestled Carter to the ground and handcuffed him. Both officers sustained minor injuries during the scuffle.

At sentencing Carter and Officer Brown told different versions of the struggle. According to Officer Brown, Carter hit Officer Lopez on the top of his head, knocking him to the ground, and then turned and punched him (Officer Brown) in the jaw. Both officers then wrestled Carter to the ground. From a sheath on his waist, Carter pulled out a folding knife. The officers knocked the knife out of his hand before he could unfold it. Only then, said Officer Brown, were they

able to put Carter in handcuffs. Carter conceded only that he struggled with the officers and that he had a knife on his belt. He denied hitting the officers or unsheathing the knife.

Based on a review of the police reports and interviews with both Carter's attorney and Officer Brown, the probation officer credited Brown's version of events and concluded that both the punches and the unsheathing of the knife created a substantial risk of serious bodily injury to the officers. Carter's presentence report thus recommended a six-level upward adjustment under § 3A1.2(c)(1). Carter objected.

After hearing the opposing testimony from Carter and Officer Brown, the judge concluded that they both had a "credible demeanor." To determine "which one's story is more likely true," she looked at photographs of the officers' injuries taken on the day of the arrest. The photographs of Officer Brown, the judge observed, showed an abrasion on his lower leg, which suggested that he "really was involved in some kind of a tussle." But the judge saw no indication that Officer Brown had been struck in the chin, as he had testified. The photograph of Officer Lopez, on the other hand, showed a "mild but noticeable injury to the upper right portion of [his] head," which, the judge said, corroborated Officer Brown's testimony that Carter hit Officer Lopez in the head. The judge concluded that the injuries were consistent with Officer Brown's testimony.

The judge then turned to the question whether to apply the upward adjustment specified in § 3A1.2(c)(1). After reciting the language of the guideline,[1] the judge said that

---

[1] Section 3A1.2(c)(1) provides:

she was "a little bit puzzled." As she put it, "what happened after the vehicle was stopped is troubling but not alarming[,] … not, I suspect, truly extraordinary," and by comparison the high-speed chase was "much more serious," even if it resulted in only a two-point upward adjustment under § 3C1.2. Although the judge apparently thought the six-level increase in § 3A1.2(c)(1) overstated the seriousness of the scuffle, she said that she was inclined to adopt the findings of the probation officer:

> I do think Mr. Carter was struggling enough that the officers were injured, at least mildly, at the time of the arrest. But I personally don't think that that conduct is so serious that it generates -- that it supports a six-level increase. But I think that that's for me to consider as a 3553(a) factor as opposed to a calculation, because I think what I am supposed to do at sentencing first is do the calculations under the guidelines. And I think under the guidelines, the probation officer's findings are supportable.

Defense counsel then questioned whether the judge had found that Carter's conduct was serious enough that it created a "substantial risk of … serious bodily harm." The

---

> If, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable … knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom … increase by 6 levels.

judge said she was "looking at it again." The prosecutor advised the court that "[t]here is some case law" on point—presumably a reference to *United States v. Alexander*, 712 F.3d 977, 979 (7th Cir. 2013), which holds that a single blow to the head carries with it the risk of serious bodily harm. In addition, the prosecutor continued, the unsheathing of the knife was sufficient, on its own, to support the upward adjustment.

The judge responded that she was not willing to base the upward adjustment in § 3A1.2(c)(1) on a finding that Carter had unsheathed the knife because she "did find both witnesses credible." And unlike the injuries to the officers, which were visible in the photographs, there was no evidence corroborating Officer Brown's testimony that Carter had pulled the knife. The prosecutor then interjected, as he had done moments earlier, that "the case law is clear[] that simply punching an officer [in the head], which clearly happened here, would support this six-level adjustment." The judge ultimately accepted that argument. She adopted the probation officer's findings, not based on the knife but rather based "on the law," which, she said, the government had "correctly summarized by saying that even a punch or two punches to an officer qualifies."

Applying the six-level upward adjustment, the judge calculated a guidelines range of 135 to 168 months based on a total offense level of 33 and a criminal history category of I, and imposed a below-guidelines sentence of 120 months in prison followed by four years of supervised release.

## II. Analysis

On appeal Carter argues that the judge erred in applying the upward adjustment in § 3A1.2(c)(1) without explicitly finding that he had created a substantial risk of serious bodily injury to the officers. Although Carter concedes that a single blow to the head *can* be enough to pose a substantial risk of serious bodily injury, he argues that the judge was required to make an explicit finding that his actions posed such a risk given the specific circumstances of this case. *See Alexander*, 712 F.3d at 979 ("Applying the Guideline standard to the specific circumstances of a case is the responsibility of the district judge."). Simply adopting the findings of the probation officer, he continues, is not enough to support the adjustment where, as here, the judge made several comments that conflict with those findings. In particular, Carter points out that the judge said that she did not think the "scuffle" was very serious or out of the ordinary, and at one point even stated that his conduct was not "so serious that it … support[ed] a six-level increase." The judge's reservations, Carter says, cannot be reconciled with her decision to apply the enhancement.

But the judge was permitted to adopt the probation officer's findings from the presentence report, including the finding that the blow to the head sustained by Officer Lopez created a substantial risk of serious bodily injury. Although the judge's remarks could have been clearer, we're satisfied that she understood the legal standard for imposing the adjustment. After all, she read aloud from the text of the guideline, and when defense counsel reminded her that she must find that Carter's actions created a substantial risk of serious bodily injury, she acknowledged counsel's argu

ment. She went on to conclude that the evidence in the record—including Officer Brown's testimony about the blows to the head and the photographs of the officers' injuries—supported the probation officer's finding. *See id.* ("Even one blow to the head, and even by an unarmed person, can pose a substantial risk of serious injury within the meaning of the Guidelines."). Nothing more was required.

AFFIRMED.